# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2012

No. 11-60863
Summary Calendar

Lyle W. Cayce
Clerk

TEKLU F. HAILE,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A200 944 244

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Teklu F. Haile applied for asylum, statutory withholding of removal, and relief under the Convention Against Torture (CAT). He claimed that he feared persecution due to his political opinion. The immigration judge (IJ) denied asylum and statutory withholding of removal, but granted relief under the CAT. The Board of Immigration Appeals (BIA) dismissed Haile's appeal. Haile now petitions for review of the agency's decision denying asylum and statutory withholding of removal.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

According to Haile's asylum application, and his testimony, which the IJ found credible, Haile experienced punishment during his tenure in the Eritrean national service. In a meeting led by Colonel Debasay, Haile made a statement in which he complained about the treatment of student-soldiers in the national service. He was punished by being placed in the "helicopter position" for three hours. On a later date, Haile was arrested and taken for interrogation after he gave money to a friend who subsequently used the money to facilitate desertion from the Eritrean military. The interrogators inquired why Haile had given money to his friend; they also demanded to know why Haile had spoken out at the meeting. The interrogators did not believe Haile's explanation that he had given the money innocently; they instead believed that Haile had aided and abetted desertion from the military. Haile was imprisoned for one year and five months under harsh conditions.

Haile remained in the national service following his release from prison. In a meeting led by Colonel Jemal, Haile expressed disagreement about the policy of shooting to kill deserters. He was punished by being placed in the "helicopter position" for 90 minutes. Approximately two weeks later, when his cousin became ill, Haile's request for leave to see his cousin was denied because he had made inappropriate statements in public. When his cousin died, Haile's request for leave was denied. Haile left camp without permission, intending to return after the customary twelve-day grieving period was over. However, he was arrested at his home and was brought back to camp. He was told he would be punished for being absent without leave and for making inappropriate public statements. He was imprisoned for four months, at which time he escaped. He eventually made his way to the United States.

Haile asserts that the IJ and the BIA erred by failing to consider direct evidence and circumstantial evidence that he was persecuted by the military on account of his actual or imputed political opinion. Citing documentary evidence, he contends that in Eritrea, which is a one-party state, the government often

2

perceives comments that are not overtly political as political opposition and that the regime imprisons persons perceived to be political opponents. He argues that the IJ impermissibly speculated that the Eritrean military functions similarly to the American military, and that such speculation contributed to the IJ's determination that he was not punished on account of his political opinion. Haile contends that the agency ignored the severity and disproportionate nature of his punishment, as well as the context of his punishment.

We will "review the BIA's decision 'procedurally' to ensure that the complaining alien has received full and fair consideration of all circumstances that give rise to his or her claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) (internal quotations and citation omitted). The BIA is not required to address evidentiary minutiae or write a lengthy exegesis. *See id.* However, the BIA's decision "must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Id.*

Although the BIA did not discuss all of the evidence of record, we are satisfied that the agency gave meaningful consideration to the evidence that supported Haile's claims. *See id.* Our review of the record indicates that the IJ fairly characterized Haile's testimony and did not engage in speculation that affected the disposition of Haile's application for asylum and withholding of removal. Haile's other arguments likewise fail to establish reversible procedural error.

Haile also asserts that the BIA erred by failing to conduct a "mixed motive" analysis. He contends that the BIA's approach did not permit it to consider whether there was more than one central reason that he was harmed.

As the Respondent notes in its brief, the "mixed motives" doctrine was altered by the passage of the REAL ID Act, which amended a number of provisions of the Immigration and Nationality Act. "Before the passage of the REAL ID Act, an alien had only to demonstrate that one of the persecutor's motives [fell] within a statutorily protected ground. Relief was available on a

showing that persecution was motivated at least in part by a protected ground." *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (internal quotation marks and citation omitted). However, "under the REAL ID Act, an alien must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.* (internal quotation marks and citation omitted). "[A]lthough a statutorily protected ground need not be the only reason for harm, it cannot be 'incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (internal quotation marks and citation omitted).

Our review reveals no error; the BIA applied the proper standard. Further, we will not disturb the BIA's factual determination that Haile failed to demonstrated the requisite nexus between persecution and a protected ground, as the finding is supported by substantial evidence. *See Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004). That is to say, the record does not support a determination that any reasonable factfinder would be compelled to conclude that a central reason for the persecution of Haile was political opinion or imputed political opinion. *See Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009); *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 348 (5th Cir. 2006).

PETITION FOR REVIEW DENIED.